# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| In the Matter of: | In Bankruptcy |
| **JOHN O. AND SHARON K. CRISPIN,** | Chapter 7<br>Case No. 10-49725-MBM |
| Debtors. | Hon. Marci B. McIvor |
| _____/ | |
| **TIMOTHY J. MILLER, TRUSTEE,** | |
| Plaintiff, | Adv. P. No. 10-07551-MBM<br>Hon. Marci B. McIvor |
| v. | |
| **KEN WRIGHT and**<br>**DIANE R. (PAYNE) WRIGHT,** | |
| Defendants. | |
| _____/ | |

## BRIEF IN SUPPORT OF TRUSTEE'S RESPONSE TO DEFENDANT'S MOTION TO SET ASIDE DEFAULT JUDGMENT

### Statement of Facts

Debtors John and Sharon Crispin ("Debtors") filed for Chapter 7 bankruptcy protection on March 25, 2010. Plaintiff Timothy J. Miller is the duly appointed Chapter 7 trustee ("Plaintiff" or "Trustee"). In the course of completing his duties as Chapter 7 trustee, Plaintiff learned of an avoidable transfer made by Debtor Sharon Crispin to Defendants Ken Wright and Diane R. Wright ("Defendants").

On September 10, 2010, Plaintiff's counsel sent correspondence to Defendants at 5516 NE Oaks Ridge Lane, Lees Summit, MO 64064 (the "Lees Summit Address"), via United States Postal Service, First Class Mail. The correspondence informed Defendants of Plaintiff's claims.

Defendants received the above referenced correspondence, and consulted with Mr. Jason Scherer, a Missouri attorney, about Plaintiff's claims. Throughout the next several months, Plaintiff's counsel and Mr. Scherer corresponded regularly regarding Plaintiff's claims. It was plain from the nature of the communications that Defendants were in constant contact with Mr. Scherer, and were fully informed of the status of the proceedings. Mr. Scherer has never filed an appearance in this Adversary Proceeding or any related proceedings. As it began to appear that negotiation of a settlement of Plaintiff's claims would fail, Mr. Scherer indicated to Plaintiff's counsel, that, on his clients' instruction, he was not authorized to accept service on their behalf, though he had previously indicated that he would accept such service.

After more than three months of protracted settlement negotiations failed to yield a serious offer to settle Plaintiff's claims, Plaintiff's counsel indicated to Mr. Scherer on December 9, 2010 that, failing satisfactory resolution by December 14, 2010, Plaintiff would file the present Adversary Proceeding against Defendants. A draft copy of the Complaint was attached to the December 9, 2010 correspondence.

On December 14 2010, with full knowledge of the progress of the case thus far, including the December 9, 2010 correspondence, Defendants sent a letter via facsimile to United States Senator Claire McCaskill complaining of the Debtors' behavior and asking for the Senator's assistance to "stop this bankruptcy fraud [and] misuse of the bankruptcy rules."

Plaintiff filed the Complaint in the present Adversary Proceeding on December 15, 2010. A copy of the Complaint was sent to Defendants via United States Postal Service First Class Mail at the Lees Summit Address in compliance with Fed. R. Bankr. P.

7004(b)(1). Plaintiff filed a Certificate of Service along with the Complaint.

Despite acknowledging receipt of previous correspondence at the Lees Summit Address, and with no indication that their mailing address has changed or there was any interruption of their regular mail service, Defendants contend that, somehow, they did not receive a copy of the Complaint.

Defendants did not file an Answer or any other response to the Complaint. On January 21, 2011, Plaintiff filed a Motion for Entry of Default. The Motion was granted by Order dated January 24, 2011.

On March 30, 2011, Plaintiff served Defendants with a subpoena directing the production of documents via United States Postal Service First Class Mail at the Lees Summit Address. Plaintiff filed a Certificate of Service along with the subpoena. Despite acknowledging receipt of previous correspondence at the Lees Summit Address, and with no indication that their mailing address has changed or there was any interruption of their regular mail service, Defendants contend that, somehow, they did not receive a copy of the subpoena.

Defendants did not respond or in any way comply with the subpoena. On May 5, 2011, after Plaintiff's motion, the Court entered an Order to Show Cause to Explain Failure to Produce Records (the "Show Cause Order").

Plaintiff's Counsel served the Show Cause Order upon Defendants via United States Postal Service First Class Mail at the Lees Summit Address. On May 8, 2011, the Clerk of the Court also sent a copy of the Show Cause Order to Defendants at the Lees Summit Address. Despite acknowledging receipt of previous correspondence at the Lees Summit Address, and with no indication that their mailing address has changed or there was any

interruption of their regular mail service, Defendants again contend that, somehow, they did not receive a copy of the Show Cause Order.

On May 12, 2011, less than two weeks before Defendants were to appear at a hearing on the Show Cause Order, Mr. Scherer sent a letter to Plaintiff's counsel alleging Defendants only received notice of the present Adversary Proceeding through "contact with Senator McCaskill." It is unstated when Senator McCaskill's office allegedly contacted Defendants.

Defendants filed a Motion to Set Aside Default Judgment on June 6, 2011.

## Argument

Defendant's motion is governed by F.R. Civ. P. 60(b) (made applicable to bankruptcy proceedings by F.R. Bankruptcy Rule 9024) which states:

> ***(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:***
> ***(1) mistake, inadvertence, surprise, or excusable neglect;***
> ***(2)*** newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> ***(3)*** fraud (whether previously called intrinsic or extrinsic), or misconduct by an opposing party;
> ***(4) the judgment is void;***
> ***(5)*** the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is not longer equitable; or
> ***(6) any other reason that justifies relief.***

Fed. R. Civ. P. 60(b).

The court in *In re Trans-Industries, Inc.*, 2009 U.S. Dist. LEXIS 36953 (E.D. Mich. 2009) discussed the requirements of three considerations regarding a motion for relief from an order where a default judgment had been entered. The three factors, i.e. lack of culpable conduct, existence of a meritorious defense, and lack of prejudice, were

discussed. The court emphasized that proper analysis required not a weighing of elements but rather an absolute requirement of a showing of each element in order. If there was culpable conduct on the part of the defendant, merits of defenses and existence of prejudice need not be considered.

**A. Defendants' failure to respond constitutes culpable conduct and inexcusable neglect.**

The court in *Trans-Industries* stated:

> The Court concludes that the Bankruptcy Court properly applied *Waifersong*. As the Sixth Circuit explained in *Weiss*, 283 F.3d at 794, the moving party must first demonstrate that the default judgment did not result from culpable conduct. The court cannot consider the other elements, including whether the party has a meritorious defense, unless or until the moving party establishes excusable neglect. *Id.* The fact that the Sixth Circuit instructs courts to apply Rule 60(b)(1), "equitably and liberally . . . to achieve substantial justice," *Burrell v. Henderson*, 434 F.3d 826, 832 (6th Cir. 2002), does not change the order in which the *United Coin Meter* factors must be analyzed. Rather, the "equitably and liberally" instruction is a general rule that courts should consider in deciding a Rule 60(b)(1) motion, and does not change the fact that the court must first decide whether there is culpable conduct. Also, *Waifersong* is not the "island" or outlier that Q Technology would have this Court believe. *See e.g.*, *Burrell v.* Henderson, 434 F.3d 826, 832 (6th Cir. 2006); *In re Sterling Rubber Products Co.*, No. 04-8090, 2006 WL 348143, *5-6 (6th Cir. 2006); *Weiss*, 283 F.3d at 794; *Williams v. Meyer*, 346 F.3d 607, 613 (6th Cir. 2003); *Capitol Indem. Corp. v. Jellinick*, 75 Fed. Appx. 999, 1001 (6th Cir. 2003); *U.S. v. Reyes*, 307 F.3d 451, 456 (6th Cir. 2002) (all cases in which the Sixth Circuit applied *Waifersong* and first considered whether culpable conduct existed). Moreover, the Sixth Circuit has not overturned *Waifersong* and has not otherwise abrogated its decision in *Waifersong*. The Bankruptcy Court, therefore, properly applied *Waiferson* by analyzing the culpable conduct factor first………. Q Technology consciously decided to disregard the summons and complaint. Q Technology's conscious decision, made with actual knowledge of the consequences set forth on the summons and complaint, was an attempt to thwart the judicial proceedings and shows a reckless disregard for the effect of its conduct on the proceedings. Accordingly, the Bankruptcy Court properly concluded that Q Technology's inaction was culpable conduct and, therefore, inexcusable neglect.

In the present case, it strains credulity to suggest that, while Defendants received previous correspondence directed to them at the Lees Summit Address, and without any changes or interruption in their postal service, they failed to receive any of the several documents concerning the present adversary proceeding sent to them at the same address by both the Plaintiff and the Bankruptcy Court.

Defendants had full knowledge of the adversary proceeding filed against them, and failed to respond, despite several notifications of the status of the proceedings. Only now, after the Plaintiff has gone through considerable time and expense in procuring a default judgment, subpoenaing records, preparing and filing a Motion of Order to Show Cause, and appearing at a hearing on the Order to Show Cause, have the Defendants seen fit to participate in the proceedings. As in *Trans-Industries*, the conduct of Defendants demonstrates an attempt to thwart the judicial proceedings and shows a reckless disregard for the effect of their conduct.

Defendants' behavior constitutes culpable conduct, and their failure to respond to any of the previous filings in this matter is a result of inexcusable neglect. As such, this Court should deny the Defendants Motion to Set Aside Default Judgment.

**B. Defendants have not shown that they have a meritorious defense to the Plaintiff's claims.**

Given Defendant's culpable behavior, this Court need not reach the issue of whether Defendants present a meritorious defense or whether setting aside the default judgment will prejudice the Plaintiff. Assuming, *arguendo*, that the Court reaches this issue, it should deny Defendants' Motion to Set Aside Default Judgment, as Defendants have not raised any facts to suggest the existence of a meritorious defense.

The case involves a transfer of Debtor's 2/3 interest in real property to Defendants within the time period contemplated by both 11 U.S.C. §§ 547 and 548. Defendants admit they paid only $20,000.00 in exchange for the Debtor's interest in the property. Defendants have provided the Plaintiff with their own formal appraisal valuing the Debtor's 2/3 interest at $52,668.00 (Plaintiff has conducted his own informal appraisal, which valued the Debtor's interest at $188,100.00). It is at best unclear how Defendants intend to frame this transfer as being made for reasonably equivalent value. Defendants have presented no other facts of any kind to indicate the possibility of a meritorious defense to Plaintiff's claims.

Given that Defendants have not presented a meritorious defense to Plaintiff's claims, this Court should deny Defendant's Motion to Set Aside Default Judgment.

### C. Setting aside default judgment would cause prejudice to Plaintiff.

Given Defendants' culpable behavior and failure to assert a meritorious defense, this Court need not reach the issue of prejudice to the Plaintiff. Assuming, *arguendo*, that the Court does reach this issue, the Defendant's Motion to Set Aside Default Judgment should be denied for the reason that setting aside the default would cause prejudice to Plaintiff.

Defendants have enjoyed full rights of access to the property that is the subject of the present dispute. It is believed that Defendants continue to have sole access to the property. This puts the Defendants in the unique position of being able to devalue the property should they believe it to be lost. While Defendants contend that they "were fully cooperative prior to the filing of the Complaint," and that "it would be absurd to suggest that the delay would allow Defendants an opportunity to commit fraud or collusion," Defendants have on at least one prior occasion indicated an inclination to willfully keep information from

the Trustee, when Defendants offered to provide the Trustee information regarding the Debtor's assets if and only if the Trustee released the present claims against Defendants. Given the proclivity to conceal information, the Plaintiff believes that further delay caused by the setting aside of the Default Judgment would allow Defendants an opportunity to conceal information or devalue assets in their possession.

Because the Trustee could be prejudiced by granting the Defendants' Motion to Set Aside Default Judgment, the Motion should be denied.

## **Conclusion**

For the foregoing reasons, Plaintiff respectfully requests that this honorable Court deny Debtors Motion to Set Aside Default Judgment.

The Plaintiff expressly reserves the right to supplement this brief within a reasonable time with an affidavit from Plaintiff's counsel.

Dated: June 20, 2011
/s/ Anthony J. Miller
Anthony J. Miller (P71505)
Schneider Miller, P.C.
Attorneys for Plaintiff/Trustee
645 Griswold; Suite 3900
Detroit, MI 48226
313-237-0850
amiller@schneidermiller.com